# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

AIR EVAC EMS, INC.,

        Plaintiff,

v.                                     CIVIL ACTION NO. 2:16-cv-05224

TED CHEATHAM, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-Motions for Summary Judgment. (ECF Nos. 88, 90.) For the reasons that follow, Plaintiff's Motion for Summary is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion for Summary Judgment is **DENIED**. The Court enters declaratory and injunctive relief in the manner set forth below.

### I.     BACKGROUND

The Court had occasion to discuss the factual and procedural history of this matter in its Memorandum Opinion and Order dated May 15, 2017. There, the Court denied Defendants' Motion to Dismiss the Amended Complaint. The issues now presented by way of the parties' cross-motions for summary judgment overlap substantially with those addressed in the earlier Memorandum Opinion. Some repetition will be necessary to reach a final resolution of the claims and defenses presented.

Plaintiff Air Evac EMS, Inc. ("Air Evac") provides air ambulance services in West Virginia and other states when requested by third-party medical professionals. Notably, West Virginia law

forbids Air Evac from refusing service to any patient, regardless of insured status. W. Va. Code R. § 64-48-4.15. In fact, because Air Evac is most often called upon to provide transportation in medical emergencies, the air ambulance provider does not know a patient's insured status until after the emergency transport has concluded. (Meyers Decl. at ¶ 5, Pl.'s Mot. Sum. J. Ex. C, ECF No. 90-2.)

At root, this litigation raises a federal preemption challenge to West Virginia's statutory and regulatory caps on payments to air ambulance providers for transporting patients covered under West Virginia's Public Employees Insurance Agency ("PEIA") and workers' compensation insurance programs. One of the statutes at issue—designated prior to codification as West Virginia House Bill 4315—was enacted in 2016 and represents the culmination of the State's attempts to reign in the expense of air ambulance services reimbursed by state-sponsored insurance programs. HB 4315 has two parts. The first caps the amount that the Public Employees Insurance Agency ("PEIA") will reimburse Air Evac for transporting PEIA insureds to the equivalent rate paid by Medicare. W. Va. Code § 5-16-8a(a). The second eliminates Air Evac's ability to recover any additional payment when it transports a PEIA member who is also a member of Air Evac's subscription program. § 5-16-8a(b). Air Evac seeks to invalidate this statute.

PEIA and the Office of the Insurance Commissioner ("OIC"), which is responsible for establishing and overseeing payments for healthcare services provided on behalf of workers' compensation claimants, have also established fee schedules that limit the amount Air Evac can collect for transports covered by PEIA and workers' compensation insurance. Air Evac challenges the legitimacy of the fee schedules as well. Lastly, this case concerns West Virginia

Code § 16-29D-4. The law prevents health care providers, including Air Evac, from recovering an unpaid balance from PEIA members—a practice known as "balance billing."

The Amended Complaint contains six claims for relief. Counts I and II seek a declaration that the two subsections of § 5-16-8a are each preempted by the Airline Deregulation Act of 1978 ("ADA") because they establish and limit the price of Air Evac's services. The claims request injunctive relief against Defendants Cheatham, the Director of the PEIA, and Riley, the West Virginia Insurance Commissioner. The third claim alleges that the regulation of Air Evac's subscription agreements violates the Contracts Clause of the United States Constitution and seeks declaratory and injunctive relief. The fourth and fifth claims for relief similarly seek a declaration that the PEIA and OIC fee schedules are preempted by the ADA. The claims seek injunctive relief against the PEIA Finance Board (Count IV), and Defendant Riley (Count V). The sixth claim for relief is pled in the alternative. In the event the Court does *not* invalidate § 5-16-8a and the fee schedules, Air Evac asks the Court to invalidate the prohibition on balancing billing as preempted by the ADA.

Defendants moved to dismiss the operative Amended Complaint on September 15, 2016. As stated, the Court denied that motion. The parties filed cross-Motions for Summary Judgment on May 22, 2017. Both motions have been fully briefed. On September 1, 2017, Air Evac filed a Notice of Supplemental Authority alerting the Court to the Tenth Circuit's recent decision in *EagleMed LLC v. Cox*, 868 F.3d 893 (10th Cir. 2017). Defendants filed a response on September 15, 2017. The motions for summary judgment are now ripe for consideration.

II.     LEGAL STANDARD

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *See* Fed. R. Civ. P. 56(e). "[W]hen a case presents a pure question of law as to federal preemption, the case should be resolved at the summary judgment stage." *Dominion Transmission, Inc. v. Town of Myersville Town Council*, 982 F. Supp. 2d 570, 576 (D. Md. 2013) (citing *Nat'l City Bank of Indiana v. Turnbaugh*, 367 F. Supp. 2d 805, 811 (D. Md. 2005)); *see also Lescs v. William R. Hughes, Inc.*, 168 F.3d 482, 1999 WL 12913, at *3 (4th Cir. 1999) (table decision) ("Because this appeal of summary judgment hinges on determining whether federal law preempts state law claims, an issue of material fact appropriate for trial can arise only if the claim presented is not legally preempted.").

### III. DISCUSSION

Cross-motions for summary judgment are reviewed separately if material facts are in dispute. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Here, however, the facts underlying Air Evac's claims are undisputed—the parties merely dispute the legal significance of those facts. For brevity's sake, the parties' various arguments are woven together in a single discussion. The Court begins with consideration of Defendants' standing defense. The Court then turns to the central question of ADA preemption, followed by an evaluation of Defendants' Tenth Amendment challenge. A review of the alleged Contracts Clause violation concludes the discussion.

    A.    *Standing*

Defendants challenge Air Evac's standing to sue the OIC with regard to the implementation of the fee schedule. In their response to Air Evac's motion, Defendants also question standing with respect to those claims brought against the Secretary of the DHHR, the administrator charged with enforcing the balance-billing prohibition set forth in § 16-29D-4(a)(2). Their arguments are similar to the ripeness challenge originally raised in Defendants' Motion to Dismiss.

"Federal standing has three well-known requirements: (1) injury-in-fact; (2) fairly traceable causation; and (3) redressability." *Air Evac EMS, Inc. v. Texas*, 851 F.3d 507, 513 (5th Cir. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Defendants do not dispute that the balance-billing prohibition constitutes an injury sufficient to establish standing. Defendants also concede that Air Evac presents an injury-in-fact under the workers' compensation fee schedule limiting Air Evac's recovery to 135% of the Medicare rate. Defendants' argument relates to the latter two requirements of the three-part test; specifically, whether Air Evac can establish causation and redressability. The Court will address standing as to the Secretary of the DHHR before considering Air Evac's standing to sue the OIC.

In beginning this discussion, the Court is guided by *Lujan*'s counsel.

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

504 U.S. at 561–62. There is no question that air ambulances like Air Evac are the direct target of the state laws and regulations challenged in this proceeding. Accordingly, Defendants face an uphill battle in arguing that causation is lacking, particularly with respect to Air Evac's suit against the Secretary of the DHHR.

In the standing context, causation requires a link "between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Traceability typically involves an inquiry into whether the challenged conduct was caused by the defendant as opposed to some third party not before the court. *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (citing *Lujan*, 504 U.S. at 560). Clearly, Air Evac's inability to recover its full billed charged is an injury inflicted by the State. Still, "[w]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Bronson v. Swensen*, 500 F.3d 1099, 1110–11 (10th Cir. 2007); *see also Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998) ("[W]here the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue.").

Defendants argue that the Secretary of the DHHR cannot enforce the balance-billing provisions against Air Evac. Two enforcement provisions are in issue. *See* W. Va. Code §§ 16-29-D-4, 8. Under § 16-29D-8, the Secretary of the DHHR is authorized to enforce the balance-billing prohibition set forth in § 16-29D-4. However, Defendants take the position that as a provider of emergency medical services, Air Evac falls within an exception to the balance-billing prohibition. *See* § 16-29D-4(b). As explained further below, the argument that Air Evac is an emergency healthcare provider is unpersuasive because the State has previously taken the position

6

that the exception does not apply to transportation services. The Office of the West Virginia Attorney General has warned Air Evac that the balance-billing prohibition applies to air ambulance companies. These threats of enforcement undermine Defendants' assertion that the balance-billing provision will not be enforced against Air Evac. They also establish causation for purposes of the suit against the Secretary of the DHHR.

Finally, Air Evac has also established that its claims against the Secretary of the DHHR will be redressed by a favorable decision. If the challenged provisions are preempted by the ADA, the Secretary of the DHHR will not be able to enforce them against air ambulance providers like Air Evac. Air Evac therefore has standing to sue the Secretary of the DHHR.

Defendants' standing argument with respect to the OIC is of a different nature. Defendants argue that causation is lacking because the fee schedule established by the OIC does not bind the private insurers who cover the majority of workers' compensation patients in West Virginia's privatized system. Defendants point to discovery demonstrating that many workers' compensation patients transported by Air Evac between 2014 and 2016 were insured by private payors, not the OIC. (Defs.' Mot. Sum J. Ex. N, ECF No. 96-1.) Because private insurance carriers and self-insured employers are allowed to reimburse Air Evac at rates that differ from the OIC fee schedule, Defendants claim that Air Evac can demonstrate neither causality nor redressability.

Defendants' assertions do not offer a full picture of the workers' compensation regulatory scheme. The OIC sets the reimbursement rate for "[t]he Commission, Insurance Commissioner, private carrier or self insured employer, whichever is applicable." W. Va. Code R. § 85-20-9.3. Further, a medical provider's treatment of an injured worker "constitutes acceptance by the

7

medical provider of the Commission's or Insurance Commissioner's rules and fee schedules." § 85-20-4.2. Defendants are correct that private workers' compensation insurers and self-insured employers "may enter into preferred provider and managed care agreements which provide[] for fees . . . which deviate from the schedule," W. Va. Code § 23-4-3(a)(1), and in practice, many appear to do so. For example, evidence produced in discovery reveals that the private insurer covering the majority of the workers' compensation claimants transported by Air Evac does not reimburse according to the OIC fee schedule and, at least in some instances, pays more. (Thomas Dep. at 54–55, Defs.' M. Sum. J. Ex H, ECF No. 88-27.) But these facts do not destroy the causal linkage between Air Evac's injury and the Defendants charged with implementing the workers' compensation reimbursement rates. *See Air Evac EMS*, 851 F.3d at 514 (finding air ambulance provider's injury was "fairly traceable" to state defendants' rate-setting duties). Private insurers are not required to deviate from the OIC fee schedule, and Air Evac has established that it has been reimbursed for transporting workers' compensation patients at the 135% reimbursement rate set by the OIC.

The OIC Defendants are also charged with enforcing the balance-billing prohibition, which applies regardless of whether payment is made by the OIC, a private insurer, or a self-insured employer. *See id.*, 851 F.3d at 514 (state defendants' duty to enforce statutory ban on balance billing created a traceable link to air ambulance provider's injury).

"The redressability prong entails that it must be likely, and not merely speculative, that a favorable decision will remedy the injury." *Friends of the Earth*, 204 F.3d at 154 (citing *Lujan*, 504 U.S. at 561). Importantly, Air Evac is not required to demonstrate "that a favorable decision will relieve [its] *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (emphasis in

original).  As remedies, Air Evac seeks a declaration that the OIC fee schedule is preempted by federal law and corresponding injunctive relief.  If Air Evac succeeds in invalidating these provisions, these remedies will redress the complained-of injury.  Specifically, elimination of the fee schedule will allow Air Evac to attempt to collect its full fees for workers' compensation transports.  The OIC is exclusively responsible for setting workers' compensation reimbursement rates and enforcing the balance-balling prohibition.  A declaration that these rates are invalid will prevent every workers' compensation insurer from relying on the fee schedule to set its reimbursement rates and enable Air Evac to pursue individual patients, if necessary, for the balance.

Therefore, Air Evac has standing to challenge the OIC fee schedule and balance-billing prohibition.

### B. *ADA Preemption*

As mandated by the ADA, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart [49 U.S.C. § 41101 *et seq.*]."  49 U.S.C. § 41713(b).  Thus, to merit summary judgment under this provision, Air Evac must prove that it qualifies as an air carrier for purposes of the ADA and that the challenged laws and regulations "hav[e] the force and effect of law" and "relate[] to a price, route, or service of an air carrier."  *Id.*  Defendants contend that Congress's use of the term "air carrier" in the preemption provision excludes air ambulance providers whose services are not available to the general public.  They also argue that the state laws at issue do not have the force and effect of law.  Finally, Defendants contend that Air Evac's state law claims are not "related" to the price of an air carrier.

9

> *i.* *Air Carrier*

For purposes of the ADA, an "air carrier" is broadly defined as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(2)(a)(2). "'[A]ir transportation' means any foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." § 40102(a)(5). "Interstate air transportation," in turn, is defined as "the transportation of passengers or property [across state lines] by aircraft as a common carrier for compensation." *See* § 40102(25). Therefore, Air Evac qualifies as an "air carrier" under the ADA's preemption provision by showing that it (1) is a citizen of the United States; (2) provides foreign, interstate, or mail transportation by air; and (3) is subject to regulation under 49 U.S.C. §§ 41101 *et seq. Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 731 (E.D.N.C. 2008). Defendants claim that because Air Evac does not provide its services at public request and responds only to dispatches from third-party medical professionals, it does not qualify as a "common carrier."

Defendants' theory is a novel one. No other court has ruled that an air ambulance provider is not an "air carrier" under the ADA. *See Cox*, 868 F.3d at 904 (in factually similar case, noting agreement among parties that appellee air ambulance transportation provider was an "air carrier"); *see also Schneberger v. Air Evac EMS, Inc.*, No. CIV-16-843-R, 2017 WL 1026012, at *2 (W.D. Okla. Mar. 15, 2017); *Concovich v. Air Evac EMS, Inc.*, No. 15-cv-0294,MJR-DGW, 2016 WL 843276, at *2 (S.D. Ill. Mar. 4, 2016). Nor can the Court find support for Defendants' narrow interpretation of the term "common carrier." As the ADA does not define "common carrier," courts look to common law to define the term. *See Med-Trans Corp.*, 581 F. Supp. 2d at 733.

"'The duty of a common carrier . . . is to transport for hire whoever employs it.'" *Id.* (quoting *Weade v. Dichmann, Wright & Pugh, Inc.*, 337 U.S. 801, 807 (1949)).

While it is true that Air Evac provides service only when dispatched by third party medical providers, a "common carrier" need not makes its services available to the public at large. "[T]he crucial determination in assessing the status of a carrier is whether the carrier has held itself out to the public or to a definable *segment* of the public as being willing to transport for hire, indiscriminately." *Woolsey v. National Transp. Safety Bd.*, 993 F.2d 516, 523 (5th Cir. 1993) (citing *Las Vegas Hacienda, Inc. v. Civil Aeronautics Bd.*, 298 F.2d 430 (9th Cir. 1962)) (emphasis in original); *see also Med-Trans Corp.*, 581 F. Supp. 2d at 733 ("The distinctive characteristic of a common carrier is that he undertakes as a business to carry for all people indifferently." (citation and internal quotation marks omitted)). Air Evac provides air services indiscriminately, without regard to the patient's insured status, when requested by third party medical professionals.

Furthermore, the Department of Transportation ("DOT") licenses Air Evac as an "air carrier." (Pl.'s M. Sum. J. Ex. E, ECF No. 90-3 (authorizing Air Evac to operate as an air carrier and conduct common carriage operations in accordance with the Federal Aviation Act).) Because the DOT is tasked with regulating "air carriers" under the ADA, its determination supports the conclusion that Air Evac is an air carrier. *See Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1287 (11th Cir. 2002).

In sum, the Court finds that Air Evac's practice of providing emergency air ambulance services indiscriminately when called upon by third party professionals, together with its certification as an air carrier by the DOT and court cases affirming this status, qualify Air Evac as an air carrier under the ADA.

> *ii.     Relating to "Price . . . of an Air Carrier"*

The next requirement for ADA preemption is that the challenged regulations "relat[e] to . . . the price . . . of an air carrier." 49 U.S.C. § 41713(b). The Supreme Court has identified "relating to" as the key phrase in the ADA's preemption provision, holding that "[t]he ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer, to bring into association with or connection with'—and the words thus express a broad pre-emptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Comparing similar language in the Employee Retirement Income Security Act of 1974, *Morales* held that a state law "relates to" an air carrier's prices if it has "a connection with or reference to" such prices. *Id.* at 384 (citing *Shaw*, 463 U.S. 97).

Defendants contend that the PEIA and OIC reimbursement rates do not "relate to" Air Evac's prices because Air Evac is free to set prices of its choosing, while West Virginia law only affects the amount the State will pay. The argument attempts to distinguish between prices and rates of reimbursement, with the former being covered by the preemption provision and the latter falling outside the ADA's preemptive force. The case law interpreting the ADA makes no such distinction, however, but instead emphasizes the breadth of the "relate to" provision. *Cox*, 868 F.3d at 902 (finding Wyoming law "related to" air-ambulance services, even though the law did not expressly refer to ambulance rates, because the law had a "forbidden significant economic effect" on such rates) (citing *Travel All Over the World v. Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996)); *EagleMed, LLC v. Wyoming*, 227 F. Supp. 3d 1255, 1278 (D. Wyo. 2016) (noting broad reach of the ADA's preemption provision); *Valley Med. Flight, Inc. v. Dwelle*, 171 F. Supp. 3d 930, 942–43 (D.N.D. 2016).

The Court therefore finds that the West Virginia statutes and regulations described in Air Evac's Amended Complaint "relate to" the price of an air carrier.

    *iii.*    *Having the Force and Effect of Law*

The remaining issue is whether challenged laws have the force and effect of law.

The Supreme Court has held that the determination of whether a statute has the "force and effect of law" hinges on whether the State acts as a market participant rather than a market regulator. *American Trucking Ass'ns v. City of Los Angeles*, 133 S. Ct. 2096 (2013) (interpreting the Federal Aviation Administration Authorization Act). The Court's opinion in *American Airlines, Inc. v. Wolens* offers further instruction specific to the ADA. 513 U.S. 219 (1995). In *Wolens*, the Court held that the ADA's preemption provision "stops States from imposing their own substantive standards with respect to rates, routes, or services." The ADA does not, however, prevent States from enforcing an air carrier's "own, self-imposed undertakings." *Id.* at 228.

Defendants argue that the challenged regulations do not have the "force and effect of law." As in their Amended Motion to Dismiss, their arguments stem from *American Trucking*'s "market participant" doctrine. First, Defendants argue that by capping the amount that Air Evac can recover from the PEIA and the workers' compensation division, barring the practice of balance-billing, and refusing additional recovery when Air Evac transports a member, the State merely acts as a private insurer participating in the free market. Defendants observe that private insurers often refuse to pay Air Evac's full charges. Second, Defendants dispute the existence of built-in enforcement mechanisms capable of coercing Air Evac's compliance with the laws at issue. Defendants continue to take the position that the State cannot pursue criminal liability for

violations of the statute. In their view, this strengthens the conclusion that the State is indistinguishable in this scenario from a private insurer.

The Court addressed both arguments in its prior Memorandum Opinion and Order. They failed to persuade then, and the completion of discovery has not bettered Defendants' position. In *American Trucking*, the Supreme Court concluded that the ADA does not preempt a state's "contract-based participation in a market." 133 S. Ct. at 2102. Air Evac has no contract with PEIA nor with the OIC, and, as stated previously, state law requires the air ambulance company to provide transportation services without knowing beforehand the insured status of the transported. Defendants counter that the existence of a contract is not crucial in determining whether the state is acting as a market participant. They assert that the State acts no differently from certain private insurers that refuse to pay Air Evac's full charges although they have no contract with the company. (Thomas Dep. at 40.) That much is true—in the modern healthcare system, commercial insurers may pay less than a medical service provider's full charges. (*See id.* at 7.) The State's regulatory system, however, goes a step further—the State not only establishes the rate of reimbursement from the PEIA and the OIC, but it also forecloses Air Evac's ability to bill the patient for the full balance.

Air Evac's Rule 30(b)(6) witness testified that in the event Air Evac receives less than full payment from a patient's insurer, and after filing for secondary coverage, the company would "invoice the patient" for the remaining balance.[1] (Thomas Dep. at 41:14–15.) In the case of a patient covered by the PEIA or Workers' Compensation insurance, the State has foreclosed the possibility of balance billing. By undercutting Air Evac's recovery with its reduced fee schedules

---

[1] When Defendants argue that the State is acting as a private insurer, it fails to recognize that Air Evac recovers full billed charges from some private healthcare insurers. (Thomas Dep. at 7.)

14

and preventing recovery from the individual patient, the State effectively caps Air Evac's total recovery at the State's preferred rate. A private insurer has no such ability.

Another distinction between the State's operation and those of a private insurer lies in the sanctions at the State's disposal to penalize violations of the challenged regulations. The Court mentioned the various statutory and regulatory enforcement mechanisms in its prior Memorandum Opinion and Order. To drive the point home, the Court will address several here. West Virginia Code § 5-16-12(a) is part of the West Virgina Public Employees Insurance Act and sets forth the penalties for violations of, among other provisions, the restriction on air ambulance fees set forth in § 5-16-8a. Section 5-16-12(a) creates a number of statutory violations, most of which apply to an individual plan member securing benefits to which he or she is not entitled. The provision applicable to air ambulance providers is § 5-16-12(a)(5), which states that "[i]t shall be a violation of this article for any person to . . . [w]illfully overcharge for services provided." Having violated this section, a provider "shall be civilly liable for the amount of . . . overpayment or other sums improperly received in addition to any other relief available in a court of competent jurisdiction." § 5-16-12(a). Defendants argue that pursuing civil liability for overpayment is a remedy available to a private party. However, the State defines "overpayment" by reference to its fee schedules. In the case of this statute, the State demands the ability to unilaterally cap Air Evac's rates and then sue Air Evac for billing in excess of the State's allowed amounts. The State has reserved for itself the task of deciding the worth of Air Evac's services and, through this statute, insists on maintaining the ability to sue Air Evac if the air ambulance provider disagrees with the State's assessment. This a commercial insurer cannot do.

Further, the State is distinguishable from commercial insurers because the PEIA and OIC prevent Air Evac from balance-billing and allow the Secretary of the DHHR to assess civil penalties against a healthcare providers in violation of this mandate. W. Va. Code § 16-29D-8; *see* § 16-29D-4 (setting forth prohibition on balance billing and exceptions). Defendants take the position that Air Evac's routine transmission of services makes it fall within an exception to the balance-billing prohibition. Section 16-29D-4 provides that the balance-billing prohibition "do[es] not apply to the delivery of health care services immediately needed to resolve an imminent life-threatening medical or surgical emergency." § 16-29D-4(b). At his deposition, Air Evac President Seth Myers testified that Air Evac "only deal[s] in emergency transports" relating to "time-urgent therapies." (Myers Dep. Ex. F. 30–31.) Thus, PEIA now takes the position that Air Evac is a provider of life-saving emergency treatment not subject to the prohibitions on balance-billing. The assertion is curious because the plain language of the statute does not include transportation services in the definition of "health care services." By statute, the term "health care services" includes the following:

> [C]linically related preventive, diagnostic, treatment, or rehabilitative services whether provided in the home, office, hospital, clinic or any other suitable place either inside or outside the state of West Virginia provided or prescribed by any health care provider or providers. Such services include, among others, medical supplies, appliances, laboratory, preventive, diagnostic, therapeutic and rehabilitative services, hospital care, nursing home and convalescent care, medical physicians, osteopathic physicians, chiropractic physicians, and such other surgical including inpatient oral surgery, nursing, and podiatric services and supplies as may be prescribed by such health care providers but not other dental services.

W. Va. Code § 16-29D-2. Indeed, the State has previously warned Air Evac not to rely on the exception as justification for balance-billing PEIA members. In a May 7, 2012 letter from the Office of the West Virginia Attorney General to Air Evac, the State suggested that Air Evac review

16

the very definition of "health care services" and "health care providers" set forth above. "Neither definition includes transportation services," the State continued. "Thus, your company's reliance on exemptions for emergency health care services under W. Va. Code § 16-29D-4 may be misplaced." (Pl. Mot. for Summary J. Ex. O at 5, ECF No. 90-13.)

The Court takes this correspondence as further evidence that the State has gone beyond the methods available to a commercial insurer in its attempts to control Air Evac's reimbursement. Defendants attempt to disavow this and other threats penned by the Attorney General's Office by claiming that the letters were not produced at the behest of PEIA or the OIC. However, Defendant Cheatham testified that PEIA directed its members to contact the Attorney General's office with their complaints about balance-billing. The PEIA therefore invited the Attorney General's intervention and the enforcement threats that followed. Further, it matters not that the PEIA did not threaten imposition of penalties itself. Whether through the PEIA or the Attorney General's office, the State has threatened Air Evac for failing to comply with the balancing-billing prohibition. The office in which the threats originated is irrelevant.

For these reasons, the Court **FINDS** that the challenged laws—including the mandatory fee schedules and the prohibition of balance-billing—have the "force and effect of law." ADA preemption applies.

C.  *Tenth Amendment*

Forecasting the Court's ruling on the preemption argument, Defendants next lodge a Tenth Amendment challenge to the ADA. Defendants argue that the subject of healthcare is a matter typically reserved to the states and Congress exceeded its authority by enacting the ADA. Federal intrusion into an area of traditional State dominion does not establish a Tenth Amendment

17

violation. *See W. Va. v. U.S. Dep't of Health and Human Services*, 289 F.3d 281, 295 (4th Cir. 2002). As the Fourth Circuit has explained,

> if the federal action is not impermissibly coercive and is in all other respects a proper exercise of the [power delegated to Congress], a Tenth Amendment violation will not be found simply because the federal action operates in an area that would otherwise be left to the states or because the action reflects what the state perceives to be a bad policy decision.

*Id.* (citing *New York v. United States*, 505 U.S. 144, 167 (1992)). Properly framed, the relevant question for Tenth Amendment purposes is whether the ADA constitutes an impermissible use of Congress's power under the Commerce Clause.

Defendants offer no specifics to illuminate their argument that the ADA violates the Tenth Amendment. Understandably so—it is well established that "Congress has authority to regulate and protect the instrumentalities of interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 16 (2005). Aircraft like those operated by Air Evac are "instrumentalities of interstate commerce." *Ickes v. FAA*, 299 F.3d 260, 263 (2002) (citing *United States v. Bishop*, 66 F.3d 569, 588 (3d Cir. 1995)); *see United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) ("Instrumentalities of interstate commerce . . . are the people and things themselves moving in commerce, including automobiles, airplanes, boats, and shipments of goods." (citation omitted)). Because the Commerce Clause reserves for Congress the authority to regulate air carriers, whether operating in interstate commerce or no, a State cannot challenge that authority on Tenth Amendemtn grounds. *See EagleMed*, 227 F. Supp. 3d at 1270 (rejecting Tenth Amendment challenge brought by Wyoming in defense of an air ambulance's preemption argument). The ADA does not exceed Congress's powers under the Commerce Clause, and the Court rejects Defendants' Tenth Amendment argument.

D. *Contracts Clause*

Air Evac moves for summary judgment on Count III. Air Evac asks the Court to find that West Virginia Code § 5-16-8a(b) violates the Contract Clause of the United States Constitution.

The Court has already held this provision invalid as preempted by the ADA. Thus, Air Evac's Contract Clause challenge merely offers an additional and independent basis for relief. The Court need not and should not address these arguments. "The principle of constitutional avoidance . . . requires the federal courts to avoid rendering constitutional rulings unless absolutely necessary." *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 157 (4th Cir. 2010) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)). The Fourth Circuit has counseled that a court should decline to decide a constitutional question "if another ground adequately disposes of the controversy." *Strawser v. Atkins*, 290 F.3d 720, 730 (4th Cir. 2002); *see also Bond v. United States*, 134 S. Ct. 2077, 2087 (2014) ("It is 'a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.'" (quoting *Escambia Cty. v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam))). The doctrine of constitutional avoidance applies here. ADA preemption serves as an adequate basis to invalidate § 5-16-8a(b), and the Court need not reach the issue on constitutional grounds. On this limited basis, Defendants' Motion for Summary Judgment will be granted.

V. CONCLUSION

In accordance with the foregoing discussion, Air Evac's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 90.) On Counts I, II, IV, and V of the Amended Complaint, and with respect to ADA preemption, Air Evac's motion is **GRANTED**.

The Court need not reach the merits of Air Evac's Contracts Clause challenge; therefore, Air Evac's motion as to Count III is **DENIED**. Count III of the Amended Complaint is hereby **DISMISSED**. Count VI, which is pled in the alternative, is likewise **DISMISSED**. Defendants' Motion for Summary Judgment is **DENIED**. (ECF No. 88.) Defendants' Motion to Replace an Exhibit is **GRANTED**. (ECF No. 109.)

The Court **FINDS** that the ADA preempts West Virginia Code § 5-15-8a(a)'s reimbursement cap and § 5-16-8a(b)'s regulation of Air Evac's subscription agreements. Defendants are hereby **ENJOINED** from enforcing § 5-15-8a(a) and § 5-16-8a(b).

The Court further **FINDS** that the ADA preempts West Virginia Code § 5-16-5(c)(1), § 23-4-3, the accompanying fee schedules, and all accompanying regulations, with respect to air ambulance service providers. Defendants are hereby **ENJOINED** from enforcing § 5-16-5(c)(1), § 23-4-3, and the fee schedules and regulations attendant thereto, against air ambulance service providers.

A separate judgment order will enter implementing the Court's findings. The Clerk is **DIRECTED** to remove this action from the active docket of the Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 20, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE